UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                      :

DANIEL KANE, JR., CHARLES
MACHADIO, ROGER MARINO, MYRA
GORDON, ANDREW ROY, and VINCENT
PACIFICO, as trustees of the United Teamster :     17-CV-9487 (VSB)
Fund and as Trustees of the United Teamer
Pension Fund "A",                                  **OPINION & ORDER**

                                    Plaintiffs,

             - against -

NATIONAL FARM WHOLESALE FRUIT &
VEGETABLE CORP.,

                                Defendant.
------------------------------------------------------------X

Appearances:

Marc David Braverman
Milo Silberstein
Dealy Silberstein & Braverman, LLP
New York, New York
*Counsel for Plaintiffs*

Frank Michael Graziadei
Frank M Graziadei, P.C.
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiffs, trustees of the United Teamster Fund and of the United Teamster Pension Fund

"A" (collectively, the "Fund"), brought this action against Defendant National Farm Wholesale

Fruit & Vegetable Corp. ("Defendant" or "National Farm") for unpaid partial withdrawal

liability under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §

1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980

("MPPAA"), 29 U.S.C. §§ 1381–1453. Because there is no genuine dispute that National Farm: (i) is an employer under the MPPAA; (ii) received notice of a withdrawal liability assessment against it; and (iii) failed to timely initiate arbitration, the Fund's motion for summary judgment is GRANTED.

## I. Background

### A. *The Relevant Statutory Framework*

ERISA was enacted in 1974 "to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." *Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720 (1984) (citing *Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 361–62, 374–75 (1980)). By the late 1970s, Congress became concerned with risks facing multiemployer pension plans: because of how the law was set up, "employers" had an "undesirable incentive . . . to withdraw from plans" before paying down what would otherwise be their required share of a multiemployer plan's funding, leaving "an unfair burden on the employers who continued to maintain the plans." *T.I.M.E.-DC, Inc. v. Mgmt.-Lab. Welfare & Pension Funds, of Local 1730 Int'l Longshoremen's Ass'n*, 756 F.2d 939, 943 (2d Cir. 1985) (quoting H.R. Rep. No. 96–869, Part II, 96th Cong., 2d Sess. 10, *as reprinted in* 1980 U.S. Code Cong. & Ad. News 2918, 2993, 3001). "Since withdrawing employers incurred only a contingent liability, an employer could withdraw from a plan and gamble that the plan would survive for five more years. If it did, the employer would avoid withdrawal liability." *Textile Workers Pension Fund v. Standard Dye & Finishing Co.*, 725 F.2d 843, 849 (2d Cir. 1984).

To address this problem, Congress amended ERISA with the MPPAA, which "assesses 'withdrawal liability,' or the employer's 'proportionate share of the plan's unvested benefits,'

against an employer that withdraws from a multiemployer pension plan." *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. Logan Transp. Sys., Inc.*, 293 F. Supp. 3d 336, 345 (E.D.N.Y. 2018) (Bianco, J.) (quoting *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 881 (2d Cir. 1988)). The MPPAA also assesses employers with liability for "partial withdrawals" from multiemployer plans. *Levy Bros.*, 846 F.2d at 881 (citing 29 U.S.C. §§ 1381, 1385). In other words, Congress passed the MPPAA to solve the free rider problem created by withdrawing employers.

ERISA, as amended by the MPPAA, sets forth "the rules and procedures for the calculation and collection of the amounts that an employer must pay upon complete or partial withdrawal from a multiemployer pension plan." *T.I.M.E.-DC*, 756 F.2d at 944. Of relevance here, once an employee benefit plan subject to ERISA determines that an employer has made a "complete or partial withdrawal" from the plan, the plan's "sponsor shall . . . notify the employer of . . . the amount of the liability, and . . . the schedule for liability payments, and . . . demand payment in accordance with the schedule." 29 U.S.C. § 1399(b)(1). The employer then has "90 days" from "receiv[ing] the notice" from the plan's sponsor to respond and contest the liability by, among other things, asking "to review any specific matter relating to the determination of the employer's liability and schedule of payments," as well as by "identify[ing] any inaccuracy in the determination of the amount" of liability that the plan's sponsor has stated. *Id*. § 1399(b)(2)(A). Once it receives the employer's objections and "[a]fter a reasonable review of any matter raised [by the employer], the plan sponsor shall notify the employer" as to its determination regarding the employer's objections. *Id*. § 1399(b)(2)(B).

Employers are subject to a "pay-first-question-later system." *T.I.M.E.-DC*, 756 at 947. Even if an employer objects to the liability a plan's sponsor says it owes, "within 60 days of [the

plan sponsor's] notice, the employer must begin paying the plan withdrawal liability" as determined by the plan's sponsor, "notwithstanding [the employer's] request for review or appeal.'" *Logan Transp.*, 293 F. Supp. 3d at 346 (second alteration in original) (quoting § 1399(c)(2)).  "Disputes over withdrawal liability determinations are to be resolved by arbitration, as provided in 29 U.S.C. § 1401(a)(1)." *Levy Bros.*, 846 F.2d at 881.  ERISA allows "[e]ither party [to] initiate the arbitration proceeding within a 60–day period after the earlier of—(A) the date of [the plan sponsor's] notification to the employer under [§ 1399(b)(2)(B)], or (B) 120 days after the date of the employer's request under [§ 1399(b)(2)(A)]." 29 U.S.C. § 1401(a)(1).  Further, "[i]f no arbitration proceeding has been initiated" within the timeframe allowed by ERISA, "the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing . . . ." *N.Y. State Teamsters Conference Pension & Ret. Fund v. McNicholas Transp. Co.*, 848 F.2d 20, 23 (2d Cir. 1988) (quoting 29 U.S.C. § 1401(b)).  When this happens, "the plan sponsor may bring a collection action in court." *Logan Transp.*, 293 F. Supp. 3d at 346 (citing 29 U.S.C. § 1401(b)(1)).

As a result of these statutes, "employers who fail to arbitrate disputes over withdrawal liability in a timely manner" may find themselves facing "a procedural bar" that prevents them from succeeding on defenses they may wish to argue to contest liability.  *See Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 263 (2d Cir. 1990) (quoting *Levy Bros.*, 846 F.2d at 887).

### B.  *Relevant Facts and Procedural History*

The Fund is an employee benefit plan within the meaning of ERISA and the MPPAA.  (56.1 ¶ 1.)[1]  Its beneficiaries are members of a labor union; the unions' relationship with

---

[1] "56.1" refers to Plaintiffs' Rule 56.1 Statement.  (Doc. 29.)

National Farm is governed by a collective bargaining agreement. (*Id.* ¶ 2.) Under this agreement, among other things, National Farm had to make certain pension contributions to the Fund. (Braverman Decl. Ex. A. Art. IX ("Pension Benefits").)[2]

In correspondence dated December 6, 2016, the Fund notified National Farm that National Farm owed $1,633,682 in partial withdrawal liability (the "Assessed Liability") and that National Farm should pay down the Assessed Liability pursuant to a schedule providing for payment over 73 quarters. (*See id.* ¶¶ 3–5.) In response, on or about January 31, 2017, National Farm made the first quarterly payment required by the schedule, and, in correspondence dated January 31, 2017, it requested to review the Fund's records, because it believed that the Fund had erred in calculating the Assessed Liability. (*Id.* ¶ 7; Braverman Decl. Ex. E.) The Fund never responded to National Farm's request.[3] (56.1 Opp. ¶ 3.)[4]

Having received no response from the Fund, on May 11, 2017, National Farm submitted a demand for arbitration to the American Arbitration Association ("AAA") (the "First Arbitration"). (56.1 ¶ 8; Braverman Decl. Ex. F.) However, National Farm never paid the filing fee the AAA requires to initiate arbitrations before it. (56.1 ¶ 15; Braverman Decl. Ex. I.) As a result, on or about September 5, 2017, after providing National Farm's counsel with notice that it needed to pay the fee to proceed, the AAA closed the First Arbitration. (*Id.*) After it filed the First Arbitration in May of 2017, National Farm ceased to make payments under the schedule sent to it by the Fund. National Farm did not submit the quarterly payment it was supposed to make in May of 2017, and it appears National Farm never made any further payments under the

---

[2] "Braverman Decl." refers to the Declaration of Marc D. Braverman (Doc. 28), and the exhibits thereto filed in support of Plaintiffs' motion for summary judgment.

[3] The Fund says it disputes whether it responded to National Farm's request to inspect its records, but it does so by cross-referencing a brief that does not actually dispute this fact. (*See* Doc. 34 ¶ 3; SJ Reply 3–4.)

[4] "56.1 Opp." refers to Defendant's Rule 56.1 Statement. (Doc. 32.)

5

schedule, even after the Fund sent it notices of default. (56.1 ¶¶ 9–13.)

In an email dated November 3, 2017 from the AAA, the Fund learned that the First Arbitration had been closed because National Farm did not pay the AAA's filing fee. (*Id.* ¶ 15.) The Fund then commenced this action on December 4, 2017. (*Id.* ¶ 16.) In its answer to the Fund's complaint, filed on January 26, 2018, National Farm pleaded as an affirmative defense that it "initiated Arbitration Proceedings by filing a demand for arbitration with the [AAA]." (*Id.* ¶ 17; Doc. 10 ¶ 41.) National Farm had filed a new demand for arbitration with the AAA on January 22, 2018 (the "Second Arbitration"). (56.1 ¶ 18.) The Fund filed a motion to dismiss the Second Arbitration, and, after the parties made a joint application during a conference, on April 20, 2018, I stayed this action pending the arbitrator's determination on the Fund's motion to dismiss. (Doc. 15.)

In a decision dated June 21, 2018, the arbitrator granted the Fund's motion to dismiss the Second Arbitration. (Braverman Decl. Ex. U ("Award").). In the Award, the arbitrator reasoned that "National Farm," "[a]s a filing party under the AAA Rules," was obligated to pay the AAA's filing fee when it submitted papers to begin the First Arbitration. (Award 4.) At the time of filing, National Farm had the option to pay the AAA filing fee in full, or to make the first of a series of payments set forth in the AAA's "Administrative Fee Schedules." (*Id.*) The arbitrator found that National Farm had failed to comply since it was obligated to pay, at minimum, an initial fee of $2,500 pursuant to Administrative Fee Schedules, it instead "submitted $275" and called this "payment of the initial filing fee," even though "$275 does not appear on either AAA table for any claim amount or any fee step of the Administrative Fee Schedules." (*Id.*) The arbitrator concluded that the Second Arbitration initiated by National Farm was "too late," since it had not properly initiated arbitration within "the time[frame]" set forth by the governing

6

ERISA statutory framework.  (*Id.* at 8.)   Accordingly, the Second Arbitration was dismissed.  (*Id.* at 10.)

On April 12, 2019, in response to the Fund's unopposed motion, I confirmed the Award. (Doc. 22.)  On December 6, 2019, after the close of discovery, the Fund moved for summary judgment.  (Doc. 26.)  National Farm filed papers in opposition, (Docs. 30–32), and the Fund filed reply papers, (Docs. 33–34).

## II.     **Legal Standard**

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists; if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

In considering a summary judgment motion, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

### III. Discussion

In an MPPAA case, "to prevail on summary judgment, 'there can be no genuine dispute that: (i) defendant constitutes an employer under the MPPAA; (ii) defendant received notice of a withdrawal liability assessment against it; and (iii) defendant failed to initiate arbitration as required by law." *Trs. of Nat'l Ret. Fund v. Fireservice Mgmt. LLC*, 384 F. Supp. 3d 412, 422 (S.D.N.Y. 2019) (some internal quotation marks omitted) (quoting *NYSA-ILA Pension Tr. Fund v. Am. Stevedoring, Inc.*, No. 12-CV-2506, 2014 WL 462835, at *2 (S.D.N.Y. Feb. 5, 2014)).

National Farm raises only a single argument in response to the Fund's motion for

summary judgment. It claims that, because it sent the Fund a request to review the Assessed Liability in its January 31, 2017 correspondence, (Braverman Decl. Ex. E), that triggered the Fund's obligation to respond within the meaning of 29 U.S.C. § 1399(b)(2)(B). (SJ Opp. 3.)[5] Because the Fund never sent a response within the meaning of § 1399(b)(2)(B), National Farm says, "a condition precedent to a suit for collection of withdrawal liability" never occurred, and this action must be dismissed. (*Id.* at 4.)

National Farm's argument is plainly incorrect. Rather, the MPPAA allows disputes over MPPAA withdrawal or partial liability to proceed even if, as here, a plan sponsor fails to send the response required by § 1399(b)(2)(B). The law provides that "[e]ither party may initiate the arbitration proceeding within a 60-day period after the earlier of" either "the date of notification to the employer under [§ 1399(b)(2)(B)]" or "120 days after the date of the employer's request under [§ 1399(b)(2)(A)]." 29 U.S.C. § 1401(a)(1). National Farm concedes that its January 31, 2017 correspondence was a request "pursuant to . . . § 1399(b)(2)(A)." (SJ Opp. 5.) As such, the MPPAA gave National Farm a 60-day window from around May 31, 2017—120 days after January 31, 2017—to commence arbitration. Nothing in the statutory framework suggests that Congress meant for § 1399(b)(2)(B) to impose an exhaustion requirement on a fund's ability to initiate a lawsuit to collect withdrawal liability from an employer.

Beyond the statutory text, I find it telling that National Farm's actions show that it understood that the MPPAA allowed it to fight the Assessed Liability without having received any response within the meaning of § 1399(b)(2). After all, even without receiving a response to its January 31, 2017 correspondence, National Farm attempted to commence the First Arbitration

---

[5] "SJ Opp." refers to the Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment. (Doc. 31.)

in May of 2017. (Braverman Decl. Ex. F). Yet National Farm points to no statutory text suggesting that the MPPAA bars a fund from seeking recovery while at the same time allowing an employer to try to shield itself from liability. Such would be inconsistent with the intent of Congress in passing the MPPAA, which is a "pay-first-question-later system." *T.I.M.E.-DC*, 756 at 947.

Moreover, National Farm's argument that § 1399(b)(2)(B) creates a "condition precedent" to bringing this action is inconsistent with governing case law. The Second Circuit has held that an employer cannot be granted an extension of time to commence arbitration under the MPPAA if it fails to "protect its right to arbitration by moving decisively." *Bowers,* 901 F.2d at 264. As a result of squandering its time to seek arbitration regarding the liability assessed against it, the employer in *Bowers* was held to have found itself in a position of "default;" the Second Circuit thus remanded the case to the district court "for the limited purpose of determining the amount of [the employer]'s liability." *Id.* at 265. In reaching this conclusion, the Second Circuit remarked that the default and inability to challenge liability "may seem 'a harsh result, but the harshness of the default is largely a self-inflicted wound.'" *Id.* (quoting *Levy Bros.*, 846 F.2d at 887 (some internal quotation marks omitted). Here, as with the employer in Bowers, National Farm controlled its own destiny, and its inability to contest the Assessed Liability is a "self-inflicted wound" resulting from its failure to pay the full amount of the filing fee and thereby timely commencing the First Arbitration.[6]

National Farm does not cite any case that supports its argument about how § 1399(b)(2)(B) functions as a "condition precedent" to the Fund's ability to sue to collect

---

[6] The uncontested record demonstrates that the AAA sent National Farm's lawyer notice by email that the filing fee had to be paid in order for the First Arbitration to commence. (Braverman Decl. Ex. I.) The record also shows that, for whatever reason, National Farm's lawyer never responded to this email or arranged for the filing fee to be paid. (*See id.*)

10

withdrawal liability.  It notes a case stating that "under certain circumstances the parties are not required to submit their dispute to the arbitrator first" to resolve MPPAA-related disputes, *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 6 (E.D.N.Y. 2001), even though the MPPAA generally requires that "any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of Title 29" be resolved "by arbitration," *T.I.M.E.-DC*, 756 F.2d at 944–45 (internal citation omitted).  However, the *Rao* case does not help National Farm.  First, the issue of whether National Farm timely commenced arbitration as required by the MPPAA is obviously "a question of fact for the arbitrator to determine," *cf.* 149 F. Supp. 2d at 7, and I confirmed the Award, (Doc. 22), which found that "National Farm . . . was untimely" within the meaning of the MPPAA, (Award 11).  Second, *Rao* also stated that "if the dispute is not solely over factual issues, but instead involves a constitutional question or, in some cases, a matter of statutory interpretation, it need not necessarily be resolved by an arbitrator." *Id.* at 6.  As I have already explained *supra*, there is no part of the MPPAA that supports National Farm's "condition precedent" argument.

## IV. Conclusion

For the foregoing reasons, the Fund's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to close the open motion at docket number 26 and to enter judgment in favor of the Fund.

SO ORDERED.

Dated: January 14, 2022
New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge